UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: COVIDIEN HERNIA MESH PRODUCTS LIABILITY LITIGATION NO. II,<br><br>This Document Relates To:<br><br>All Cases | MDL No. 1:22-md-03029-PBS |

**COVIDIEN DEFENDANTS' SUBMISSION REGARDING OUTSTANDING
CASE MANAGEMENT ISSUES**

On September 30, 2022, the Parties submitted three draft case management orders: (1) a Proposed Scheduling Order; (2) a Proposed Order Governing the Production of Hard Copy Documents and Electronically Stored Information ("ESI"); and (3) a Proposed Confidentiality and Protective Order. ECF Nos. 48, 48-1, 48-2, 48-3. After extensive conferral, the Parties have agreed on the contents of the majority of all three orders. However, a handful of issues remain unresolved, and the Parties request the Court's guidance on those issues. Covidien's positions on the remaining issues are set forth below:

**I.      SCHEDULING ORDER**

After continuing to meet and confer, there is one point of disagreement between the Parties on the Scheduling Order, ECF No. 48-1, which concerns coordinating depositions of Covidien witnesses with those cross-noticed in the parallel proceeding in Massachusetts Superior Court, Middlesex County, before the Honorable Christopher Barry-Smith (the "MA Coordinated Proceeding").

Covidien originally proposed a date for the close of general corporate discovery of September 30, 2023, which is the date for close of general corporate discovery in the MA Coordinated Proceeding. Plaintiffs requested a date of April 8, 2024. Covidien is willing to

1

agree to the April 8, 2024 date provided that Plaintiffs are required to depose Covidien witnesses, whether current or former employees, on the same schedule as in the MA Coordinated Proceeding. For example, if a deposition of a Covidien witness is noticed for June 1, 2023 in the MA Coordinated Proceeding, Covidien could cross-notice the deposition in the MDL, and Plaintiffs would take that witness's deposition on that date. Plaintiffs oppose any requirement to coordinate with the MA Consolidated Proceeding.

As the Judicial Panel on Multidistrict Litigation ("JPML") recognized in creating this MDL, the MA Coordinated Proceeding[1] and the cases coordinated in this MDL involve essentially the same claims and defenses, and as a result, the parties in both actions should endeavor to coordinate discovery. *See* ECF No. 2 (Transfer Order) at 3 ("Centralization [in the District of Massachusetts] will facilitate coordination with the coordinated state court proceeding in Massachusetts state court.").[2] Even in a deposition that is cross-noticed from the MA Coordinated Proceeding into the MDL, Plaintiffs will have an opportunity to independently ask

---

[1] The MA Coordinated Proceeding includes more than 5,700 plaintiffs, whereas the MDL currently includes approximately 170 plaintiffs.

[2] The JPML considers the ability to coordinate related state and federal proceedings as a factor favoring the creation of an MDL. *See In re Plavix Mktg., Sales Practices & Prods. Liab. Litig. (No. II)*, 923 F.Supp.2d 1376, 1378 (J.P.M.L. 2013) ("[C]reation of a Plavix MDL will not only result in the usual Section 1407 efficiencies, it also likely will facilitate coordination among all courts with Plavix cases, simply because there will now be only one federal judge handling most or all federal Plavix litigation."); David F. Herr, *Multidistrict Litigation Manual: Practice Before the Judicial Panel on Multidistrict Litigation* § 6:13 (2022 ed.) ("Multidistrict Litigation Manual") ("the opportunity to coordinate state and federal proceedings should be a powerful force favoring that forum as a transferee district"); *see also* Multidistrict Litigation Manual § 9:17 ("Another frequent—and increasingly important—part of management of transferred cases is the coordination of those cases with other litigation. This aspect of case management is implicit in the Panel's articulation of the opportunity to effect this coordination as a reason to order transfer or for [selection] of a particular transferee district or transferee judge.").

their own non-duplicative, non-harassing questions of Covidien witnesses, so there is no prejudice to Plaintiffs.

Covidien understands that the two proceedings involve different counsel who may have different approaches to the litigation and may choose to focus on different issues. But that is true in nearly every situation such as this, where there is parallel state court and federal court litigation. But as the JPML has made clear and as Covidien believes this Court expects as well, the Parties should endeavor to coordinate to save resources, promote efficiency, and avoid duplication and the burden on witnesses of being deposed multiple times over the span of a few months regarding essentially the same topics.

For these reasons, Covidien respectfully requests that the Court order the close of general corporate discovery for the Bellwether Discovery Pool Plaintiffs either (i) on September 30, 2023, or (ii) if on April 8, 2024, that it also require Plaintiffs to coordinate corporate depositions with the MA Coordinated Proceeding and conduct Covidien witness depositions on the same schedule as in the MA Coordinated Proceeding.

## II.   CONFIDENTIALITY AND PROTECTIVE ORDER

There is only one point of disagreement between the Parties on the Confidentiality and Protective Order: to whom the Parties may disclose Highly Confidential Information. Covidien proposes limiting disclosure of Highly Confidential Information to (i) Parties' counsel and their staff, (ii) retained experts and consultants and their staff, (iii) litigation support personnel, (iv) the Court and its staff, and (v) any witness or deponent for whom it appears on the face of the document that the witness or deponent was an author, addressee, or intended or authorized recipient of the highly confidential document and who agrees to keep the information confidential. *See* ECF No. 48-3, Section 3.c.1.iv. Plaintiffs dispute only the last category and want to be able to show Highly Confidential Information to any witness who agrees to keep the

information confidential, which is the same level of protection given to Confidential documents. *See id.*, Section 3.c.2.iv.

Pursuant to the agreed-upon definition, Highly Confidential Information includes documents or information that contain "(1) research and development material on a new product that has not been approved or cleared by the FDA or similar regulatory body, or (2) reflects a Party's price competitiveness in the market, or (3) is nonpublic marketing or business strategies of a Party concerning a current or new product." The only basis Plaintiffs have offered for opposing Covidien's proposed restriction on this type of sensitive, competitive information, disclosure of which could cause Covidien business harm, is that they want to be able to "test" Covidien's expected learned intermediary defense. Plaintiffs contend that, in order to do that, they need to be able to show Plaintiffs' treating physicians Highly Confidential Information and ask if the contents would have changed the treating doctors' treatment decisions. This is an insufficient ground on which to permit wider disclosure of Defendants' Highly Confidential Information.[3]

Plaintiffs do not need to show sensitive competitive information to treating physicians in order to "test" any learned intermediary defense. Plaintiffs are free to question doctors about whether any particular information—had it been known to the doctors at the time of Plaintiffs' hernia repair surgery—would have made a difference in the doctors' treatment decisions. And if the evidentiary record supports it (which Covidien contends it will not), Plaintiffs may also attempt to prove at trial, through appropriate witnesses with personal knowledge, that Covidien knew certain information that was not disclosed to doctors. Thus, Plaintiffs do not need to show

---

[3] Plaintiffs are obviously free to disclose their own Highly Confidential Information (i.e., sensitive medical information) to whomever they choose.

4

any Highly Confidential Information to doctors to establish these facts and prove their cases at trial.

Under the agreed portions of the Confidentiality and Protective Order, Plaintiffs already will be able to show any witness who agrees to be bound by the Protective Order Confidential Information.  And by definition, the amount of Highly Confidential Information in the cases will be minimal.  In fact, to date in the MA Coordinated Proceeding, in which Covidien has so far produced approximately 120,000 documents, none have yet been marked as "Highly Confidential."  This therefore will not be a significant volume of data, and Plaintiffs do not need to show treating doctors (or any other witnesses outside of the definition) Highly Confidential Information for their stated purpose.

For these reasons, Covidien requests that the Court order that Highly Confidential Information may be disclosed only to (i) Parties' counsel and their staff, (ii) retained experts and consultants and their staff, (iii) litigation support personnel, (iv) the Court and its staff, and (v) any witness or deponent for whom it appears on the face of the document that the witness or deponent was an author, addressee, or intended or authorized recipient of the highly confidential document and who agrees to keep the information confidential.

### III.   ESI PROTOCOL

There are three outstanding issues regarding the ESI Protocol.  ECF No. 48-2.  The first two concern the manner of production to Plaintiffs of the productions Covidien already has made in the MA Coordinated Proceeding.  Written discovery has been proceeding in the MA Coordinated Proceeding since early 2021 and Covidien has produced approximately 120,000 total documents in that case.  Covidien is willing to produce that material to Plaintiffs in short order, but Plaintiffs want Covidien to re-do several aspects of the prior productions.  Plaintiffs have offered no justification for that burden.

1.      **ECF No. 48-2, Section I.I—Use of Prior Productions**

Defendants collected custodial documents for production in the MA Coordinated Proceeding in April and May 2022—just a few short months ago. However, Plaintiffs are requesting that Covidien update electronic custodial files through the present time. Plaintiffs have articulated no basis for insisting on this burdensome additional collection, and there is none. Based on the complaints filed to date, most Plaintiffs appear to be alleging injuries that occurred in 2020 or prior. There is thus no reason to assume that there have been documents created in the past five months that would be relevant to Plaintiffs' claims. On the other hand, it would be time-consuming and burdensome for Covidien to collect additional documents with very little expected upside for Plaintiffs. The Court therefore should deny Plaintiffs' request for an additional collection, review, and production of these documents.

2.      **ECF No. 48-2, Section III.H—Email Threads**

This is another area where Plaintiffs' insistence on a different production format from Covidien's prior productions would cause an undue burden on Covidien with little to no benefit to Plaintiffs. In the MA Coordinated Proceeding, the parties agreed that, where individual email messages are part of a single "thread," a party may choose to produce only the most inclusive message and need not produce earlier, less inclusive email messages that are fully contained, including attachments, within the most inclusive email message. Only email messages for which the parent document and all attachments are contained in the more inclusive email message will be considered less inclusive email messages that need not be produced; and if the later message contains different text (such as where the later message adds in-line comments to the body of the earlier message), or does not include an attachment that was part of the earlier message, the earlier message must be produced.

Covidien produced emails subject to this standard agreed-upon provision in the MA Coordinated Proceeding, and therefore, Covidien's prior productions contain only the most inclusive email messages and not every duplicative lesser included email. Plaintiffs, however, want Covidien to go back and search for and produce all the lesser-included emails in this proceeding. Plaintiffs have again articulated no basis for that request and no justification for the burden on Covidien of so doing. Plaintiffs have not suggested, for example, that the lesser-included emails include any unique information that is not already contained in the most inclusive emails—nor could they.

As discussed above with regard to the Scheduling Order, the Parties should endeavor to coordinate discovery in this action with that occurring in the MA Coordinated Proceeding. *See* ECF No. 2 (Transfer Order). Plaintiffs have provided no grounds for different production formats in this proceeding than in state court, and there is no reason for Covidien to re-create the wheel on prior email productions.

        **3.**     **ECF No. 48-2, Section V.A—Privilege Log**

The dispute here is on the cadence by which Covidien will serve privilege logs for any withheld documents. Covidien agrees to produce privilege logs on a rolling basis. Plaintiffs are insisting on monthly privilege logs. But such a requirement does not make sense because it may not align with the review and production schedule. Covidien should provide a privilege log when there has been a sufficient volume of privileged documents withheld, which might not happen every 30 days. Serving privilege logs on a rolling basis, just as documents are produced on a rolling basis, is reasonable and routine, and Plaintiffs' insistence on a monthly log is inefficient and without justification.

*       *       *

Defendants are prepared to address any questions the Court may have regarding these issues at the status conference on October 25.

Dated: October 14, 2022

Respectfully submitted,

*/s/ Jessica C. Wilson*
Jessica C. Wilson (BBO No. 692674)
DLA Piper LLP (US)
33 Arch Street, 26th Floor
Boston, MA  02110-1447
Tel: (617) 406-6000
Fax: (617) 406-6100
jessica.wilson@us.dlapiper.com

Loren H. Brown
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 335-4500
Fax: (212) 335-4501
loren.brown@us.dlapiper.com

Joseph G. Petrosinelli
Daniel Shanahan
Ashley W. Hardin
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC 20024
Telephone: (202) 434-5000
Fax: (202) 434-5029
jpetrosinelli@wc.com
dshanahan@wc.com
ahardin@wc.com

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

      I, Jessica C. Wilson, certify that on October 14, 2022 a true and correct copy of the foregoing document was served on all counsel of record by filing it with the Court's NextGen CM/ECF system.

                                          */s/ Jessica C. Wilson*
                                          Jessica C. Wilson