i

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: COVIDIEN HERNIA MESH PRODUCTS LIABILITY LITIGATION (NO. II)<br><br>**This Document Relates To:**<br>　　　　　All Cases | MDL No. 3029-PBS<br>Hon. Patti B. Saris |

**PLAINTIFFS' STATEMENT OF THE CASE**

**TABLE OF CONTENTS**

INTRODUCTION……………………………………………………………………………1

FACTUAL OVERVIEW…………………………………………………………………...3

    A.   HERNIA SYNOPSIS ................................................................................................ 3

    B.   DESCRIPTION OF DEFENDANTS' HERNIA MESH DEVICES ............................ 4

        1.   Covidien Bare (Non-Coated) Polymer Hernia Mesh Devices .................................... 4

        2.   Covidien Coated (Resorbable Collagen Barriers) Polymer Hernia Mesh Devices .. 5

        3.   Covidien Polymer Hernia Mesh Devices with PLA Microgrips ................................ 6

    C.   FDA CLEARANCE—NOT APPROVAL ..................................................................... 7

    D.   PLAINTIFFS' INJURIES CAUSED BY COVIDIEN HERNIA MESH DEVICES .. 8

PLAINTIFFS' CLAIMS & COVIDIEN'S DEFENSES ............................................................. 9

    A.   PLAINTIFFS' CAUSES OF ACTION RESULTING FROM DEFENDANTS'
        HERNIA MESH DEVICES ........................................................................................ 9

    B.   COVIDIEN'S DEFENSES ........................................................................................ 15

CONCLUSION ........................................................................................................................ 16

**TABLE OF CONTENTS**

INTRODUCTION……………………………………………………………………………1

FACTUAL OVERVIEW…………………………………………………………………...3

    A.   HERNIA SYNOPSIS ................................................................................................ 3

    B.   DESCRIPTION OF DEFENDANTS' HERNIA MESH DEVICES ............................ 4

        1.   Covidien Bare (Non-Coated) Polymer Hernia Mesh Devices .................................... 4

        2.   Covidien Coated (Resorbable Collagen Barriers) Polymer Hernia Mesh Devices .. 5

        3.   Covidien Polymer Hernia Mesh Devices with PLA Microgrips ................................ 6

    C.   FDA CLEARANCE—NOT APPROVAL ..................................................................... 7

    D.   PLAINTIFFS' INJURIES CAUSED BY COVIDIEN HERNIA MESH DEVICES .. 8

PLAINTIFFS' CLAIMS & COVIDIEN'S DEFENSES ............................................................. 9

    A.   PLAINTIFFS' CAUSES OF ACTION RESULTING FROM DEFENDANTS'
        HERNIA MESH DEVICES ........................................................................................ 9

    B.   COVIDIEN'S DEFENSES ........................................................................................ 15

CONCLUSION ........................................................................................................................ 16

# INTRODUCTION

Plaintiffs' Statement of the Case provides an overview of this hernia mesh strict products liability/personal injury multidistrict litigation, No. 3029, which began in June 2022 as a Massachusetts federal proceeding. The JPML assigned the Hon. Patti B. Saris to preside over the recent MDL. To date, nearly 300 Plaintiffs from various jurisdictions are part of MDL No. 3029 through direct filing.

The MDL Defendants are a group of U.S. and worldwide synthetic hernia mesh product manufacturers, marketers, promoters, sellers, and distributors, almost all of whom have been dismissed without prejudice upon stipulation in accordance with CMO No. 6. For purposes of Plaintiffs' Statement of the Case, the "remaining Defendants" in the MDL are the following two: Defendant Covidien LP, a Delaware corporation with its principal place of business in Massachusetts; and Defendant Sofradim Production SAS, a French company acquired by Covidien.[1]

Since 1990, Covidien has manufactured, tested, marketed, sold, and distributed some 20 varied and related hernia mesh devices throughout the U.S. and worldwide. To date, nine of Defendants' devices are at issue here.[2] All Plaintiffs in this MDL have been implanted with at least one Covidien product. And all have suffered varied medical problems and injuries due to Defendants' misconduct related to their hernia mesh devices.

---

[1] Plaintiffs use the name "Covidien" or "Defendants" collectively throughout their Statement of the Case.
[2] Defendants list nine of 20 devices as being in the MDL now. Covidien Defendants' Statement of the Case at 5.

Significantly, however, the theme throughout Covidien's Statement greatly understates Defendants' acts and omissions concerning their hernia mesh products—indeed, Defendants essentially ignore their own actions. Rather, they highlight the use of synthetic hernia mesh as having been the standard of care for over 60 years, and observe that it continues so today. And they dwell upon the hazards posed by all surgery, including hernia mesh surgical repair. In the same vein, Defendants stress the risks presented by hernia surgery, including procedures not using hernia mesh.

And as for Plaintiffs, Defendants afford little credence to their position on the lack of safety and efficacy of Covidien hernia mesh products. Rather, they blame Plaintiffs for asserting a "grab-bag of defect claims," supposedly disregarding the serious perils encountered by all industry hernia mesh products manufacturers, including Covidien. Additionally, Defendants maintain that Plaintiffs ignore their hernia mesh devices' numerous positive attributes and excellent performance exceeding all other similar devices in the industry. Defendants' Covidien Statement at 1-4.

But as Plaintiffs will demonstrate to the Court, the facts, including supporting scientific literature, establish that the defense position is far from the truth. Plaintiffs' Statement of the Case provides an outline below establishing that all is not as Covidien makes it out to be.

Among other things regarding their devices, Defendants' design and manufacturing defects; their failure to warn the public, including Plaintiffs and their health care providers, of those deficiencies; their breaches of warranty; plus their negligence-related conduct, have all caused Plaintiffs' post-repair hernia mesh injuries. And Plaintiffs' injuries, resulting from their implantations with Defendants' hernia mesh devices, triggered this newest MDL litigation against Covidien. Plaintiffs now seek damages and other remedies proximately caused by Defendants' hernia-mesh related misconduct.

**FACTUAL OVERVIEW**

A.  **HERNIA SYNOPSIS**

Hernias—bulges in internal organs through tears or weak muscle or tissue areas—are commonplace medical conditions affecting some four million Americans annually. Several types of hernias are generally recognized and surgically treated. Among them are abdominal hernias (internal organs protruding through a muscle or tissue wall); inguinal (groin) hernias; ventral (abdominal wall) hernias; umbilical (near the navel) abdominal wall hernias; and post-operative incisional hernias.

A hernia typically requires surgical intervention. Surgical repair occurs occasionally with sutures alone, but more often in combination with synthetic mesh. Defendants' hernia mesh devices, composed of plastic mesh and used for surgical repair, are at issue in this MDL. Their synthetic products are all manufactured with polymer, either polyester or polypropylene.

Surgical hernia repair is very often associated with medical issues. Such injurious medical events may include the following: pain, infection, hernia recurrence, adhesion (scar-like tissue sticking together), bowel obstruction (large or small intestinal blockage), bleeding, fistulae (abnormal connection between organs, vessels, or intestines), surgical site fluid build-up, and perforation (hole in neighboring tissues or organs). Those problems are caused by the implantation of Covidien hernia mesh products.

The most common post-repair medical issues are pain, infection, hernia recurrence, adhesion, and bowel obstruction, often requiring further surgical repair. But other adverse medical events may also occur after device implantation, including hernia mesh migration, and shrinkage or contraction. Plaintiffs in this MDL have been subject to many of those hernia mesh post-repair medical problems.

B. **DESCRIPTION OF DEFENDANTS' HERNIA MESH DEVICES**

Defendants' hernia mesh devices all consist of polymer. Covidien designed, patented, manufactured, labeled, marketed, sold, distributed, or otherwise placed those hernia mesh devices on the market over the past 30-odd years. The products are composed, in whole or in part, of a permanent polymer, either polyester or polypropylene. But the devices differ in other characteristics. Among the differences are materials, pore size, density, filament, and others. The device differences include the 20 hernia mesh products listed and described below.[3]

The following synopsis furnishes a broad description of Defendants' hernia mesh products. Plaintiffs detail the separate nature of each device category, as well as distinct, related, or identical medical risks and problems the products cause overall.

Defendants have put on the market the following three categories of hernia mesh devices, each of which contains several different products:

1. **Covidien Bare (Non-Coated) Polymer Hernia Mesh Devices**

   - According to Covidien, Defendants' Bare Polymer Devices allegedly contain permanent and inert polymer plastics, made of either polyester or polypropylene. Despite Covidien's false claims of inertness, however, polyester and polypropylene are both non-inert materials, and are biologically incompatible with human tissue. Thus, they often incite chronic immune responses—a fact Defendants do not publicize.

   - Some Covidien Bare Polymer Devices are **multifilament**, and thus are thicker, heavier, and denser than **monofilament** products. By increasing the foreign body load, multifilament products create and prolong inflammatory and foreign body reaction, resulting in scarification and adhesion.

   - Multifilament hernia mesh device types also lead to infection. They require complete mesh removal to remedy the problems they cause.

---

[3] As noted above, Defendants assert that nine devices are at issue in this MDL. The nine are distinguished by an * next to each product's name.

4

- **Covidien Bare Polymer Hernia Mesh Devices** are named and generally described as follows:

    - **Parietex Flat Sheet (Hydrophilic) Mesh***
      Knitted synthetic mesh device made of multiple strands of hydrophilic (*i.e.,* attracting liquid) polyester filaments, with varying pore constructions.  The mesh used is for inguinal or incisional hernias, and have rigidity for extraperitoneal placement

    - **Parietex Lightweight Hydrophilic Mesh**
      Lighter weight version of the mesh above

    - **Parietene Flat Sheet Mesh**
      Monofilament polypropylene mesh

    - **Parietene Lightweight Mesh**
      Lighter weight version of the mesh above

    - **Parietene Macroporous Nonabsorbable Mesh**
      Same with larger pores

    - **SurgiPro Multifilament Polypropylene Flat Sheet Mesh**
      Knitted synthetic mesh device; multifilament propylene similar to Parietex Flat Sheet Mesh

    - **SurgiPro Monofilament Clear Polypropylene Mesh**
      Newer version of the above mesh

2. **Covidien Coated (Resorbable Collagen Barriers) Polymer Hernia Mesh Devices**

- Extreme risks such as adhesions, fistulae, infection, and erosion are caused by polypropylene devices placed intraperitoneally (near the bowel or other organs).  Therefore, to avoid these problems Covidien coats the material with a resorbable collagen barrier.  But risks with the barrier still outweigh benefits because the barrier prevents tissue ingrowth only for the first days of implantation.  But the material is substandard and subject to oxidative degradation.  Additionally, it attracts liquids, thus exacerbating adverse reactions.

- **Covidien Coated Hernia Mesh Devices** are the following:

    - **Parietex Composite Mesh***
      Parietex Mesh coated with absorbable collagen film from animal material, intended to be placed intraperitoneally

5

- **Parietex Composite Open Skirt Mesh**
  Layer facilitating positioning by the implanting surgeon

- **Parietex Composite Parastomal Mesh**
  Doughnut-shaped; one-sided absorbable collagen for implanting adjacent to the bowel

- **Parietex Composite Hiatal Mesh**
  Horseshoe-shaped for hiatal hernia repair

- **Parietex Optimized Composite Mesh***
  More resistant collagen film

- **Parietex Optimized Composite Open Skirt Mesh**
  Same as the above mesh, with an added layer of open skirt to facilitate intraperitoneal ventral hernia repair

- **Parietex Composite Ventral Patch***
  Small monofilament circular ventral polyester patch containing resorbable collagen film; two rigid absorbable polyglycolic-lactic acid (PGLA) expanders and removable handles for mesh shape memory and stability during intraperitoneal ventral hernia repair

- **Symbotex Composite Mesh***
  Lighter weight than the above mesh

- **Symbotex Composite Mesh Open Skirt**
  Same as the above mesh; used to facilitate intraperitoneal ventral hernia repair

- **Parietene DS Composite Mesh***
  Soft and rigid synthetic mesh; nonabsorbable microporous monofilament coated with absorbable film; used for intraperitoneal ventral hernia repair

3. **Covidien Polymer Hernia Mesh Devices with PLA Microgrips**

- Defendants' "PLA Microgrip" design is an alternate to suturing/tacking in surgical implantation; thousands of resorbable Microgrips are added to meshes. Nonetheless, risks outweigh benefits as they attract fluids, and thus incite profound inflammatory responses.

- The Microgrip design also results in pain, tissue contractions, infection, and a higher risk of hernia recurrence. The Microgrips' removal requires much tissue removal, increasing future complexity and causing chronic debilitating pain. Defendants did not warn about those high risks but promoted Microgrip devices as providing less pain.

- Covidien Devices with **Microgrips** are the following:

    - **Parietex Easegrip Anatomical Self-Gripping Mesh**
      Polyester mesh with flap and keyhole for open inguinal hernia repair; incorporated with gripping Microgrips for self-fixation

    - **Parietex ProGrip Self-Fixating Mesh***
      Monofilament mesh with numerous Microgrips for self-fixation

    - **Parietex Plug and Patch System**
      Monofilament polyester plug with Microgrips; partially resorbable polylactic acid with a monofilament mesh patch

    - **ProGrip Laparoscopic Self-Fixating Mesh***
      Tack-free monofilament polyester self-fixating mesh with Microgrips; used for laparoscopic inguinal hernia repair

    - **Parietene ProGrip Self Gripping Mesh***
      Polypropylene mesh with Microgrips

    - **SurgiPro Mesh Hernia Plug and Patch**
      Monofilament SurgiPro material; patch and plug system

In summary, all the Covidien devices described above contain both identical and differing design features. But as Plaintiffs have shown, the products' flaws are evident as well, and have caused post-repair injuries to Plaintiffs. Defendants fail to mention those injuries, however.

### C. FDA CLEARANCE—NOT APPROVAL

The Food, Drug and Cosmetics Administration has never formally reviewed for safety and efficacy Defendants' hernia mesh devices implanted in Plaintiffs. Instead, Defendants sought and obtained FDA "clearance"— a term denoting that Covidien was granted leave, *i.e.,* "clearance," to market Defendants' hernia mesh devices under Section 510(k) of the Medical Device Amendment to the Food, Drug and Cosmetics Act.

FDA §510(k) provides for marketing of a medical device if the device is deemed "substantially equivalent" or "substantially similar" to other predicate devices marketed nearly 50

7

years ago (prior to May 28, 1976). Significantly, no clinical testing or clinical study was or is required to gain FDA clearance under this process. The FDA relies upon the assurances made by manufacturers of medical devices; it conducts no testing or studies of its own.

So medical devices entering the market through the FDA §510(k) process are not "approved" by the FDA, but instead are merely "cleared" for marketing and sale. The FDA has never formally reviewed for safety or efficacy any Covidien devices here—not a fact Defendants tout.

### D. PLAINTIFFS' INJURIES CAUSED BY COVIDIEN HERNIA MESH DEVICES

Plaintiffs' general discussion of post-implantation injuries caused by Defendants' hernia mesh devices is found above. They now detail some of the injuries they and others have suffered as a result of the implant of Covidien hernia mesh products. The injuries Plaintiffs and others have suffered, and the damages they have incurred, have all been caused by Defendants' three categories of hernia mesh products: their Bare (Non-Coated) Polymer Hernia Mesh Devices; their Resorbable Collagen Barrier Devices; and their Devices with Microgrips.

Depending on circumstances, certain post-repair personal injuries from implantation in Plaintiffs of Defendants' hernia mesh devices have been reported. Although the list below is not a complete list of personal injuries, it includes the following:

    Adhesions
    Infections
    Seroma
    Fistula formation
    Bowel complications and obstructions
    Erosion
    Organ perforation
    Organ removal
    Injuries to nearby organs, blood vessels, tissues, and nerves
    Chronic pain
    Hernia recurrence
    Chronic inflammatory and fibrotic reaction

      Loss of compliance
      Increased scar tissue
      Formation of a tumor like mass or meshoma
      Granulomatous response
      Allergic reaction
      Rejection of the hernia mesh
      Improper wound healing
      Foreign body response
      Bowel strangulation
      Death

Plaintiffs have suffered one or more of the above injuries. Discovery in this MDL will begin the process of learning more about Plaintiffs' post-repair medical problems.

## PLAINTIFFS' CLAIMS & COVIDIEN'S DEFENSES

### A. PLAINTIFFS' CAUSES OF ACTION RESULTING FROM DEFENDANTS' HERNIA MESH DEVICES

As addressed previously, the Covidien hernia mesh devices of various types implanted in Plaintiffs have resulted in personal injuries they sustained and damages they incurred. Plaintiffs present only a brief summary here of their main causes of action. A more detailed analysis may be found in Plaintiffs' Master Long Form Complaint, Doc. No. 88; February 13, 2023.

Unsurprisingly, Defendants skirt around the subject of Plaintiffs' claims against them, thus avoiding any hint of liability admission. But the facts support a conclusion that Covidien's misconduct proximately caused Plaintiffs' injuries. Due to Plaintiffs' present and future medical treatment resulting from their post-implant injuries, they have incurred present medical expenses, and may well incur future medical expenses. Those include, among other losses, Plaintiffs' compensatory damages, damages for pain, suffering, and physical impairment, lost earnings, out-of-pocket expenses, other non-economic damages, and lost income.

Plaintiffs' Master Long Form Complaint raises in detail several causes of action against Covidien. Plaintiffs summarize their claims below:

1. **Strict Products Liability: Design Defect**

Covidien is liable under a strict products liability theory for injuring Plaintiffs due to the defective design of their hernia mesh devices. Because their products are defectively designed, they are unreasonably dangerous and subject to complications. Therefore, the products fail to meet consumer expectations that they would perform safely and effectively for the purposes for which they were intended. An implanted hernia mesh device provides an unreasonable risk of not performing safely and effectively after a Plaintiff's surgical repair with it. In fact, the complications from an implant of Defendants' hernia mesh device often necessitate additional invasive surgery to remove the product. So the devices provide no benefit to Plaintiffs.

Thus, due to their defective design, the risks of the implanted products significantly outweigh their benefits. Moreover, when the Covidien devices were implanted in Plaintiffs, safer alternative designs—feasible both economically and technologically—existed on the market. Therefore, Covidien is liable to Plaintiffs, since the implanted defectively designed hernia mesh devices proximately caused their injuries and damages.

2. **Strict Products Liability: Failure to Warn**

Another strict products liability cause of action Plaintiffs advance is Covidien's failure to adequately warn and instruct the public, including Plaintiffs and their physicians, of the risks caused by Defendants' hernia mesh devices. The use of such inherently dangerous products poses substantial danger that users cannot recognize. In short, Defendants improperly and deceptively promoted, marketed, and sold their hernia mesh devices as safe and effective products. That is far from the truth, however.

To the contrary, Defendants marketed their products to the public, including Plaintiffs and their physicians, by providing them with grossly incomplete data concerning the devices' short-

and long-term performance. Among the information Covidien improperly failed to divulge was the following: the devices were not life-long implants as Defendants represented; they had unusually high infection rates; and both polypropylene and polyester presented risks, such as adhesions, organ perforation, recurrence, infections, soreness, fistulae, revision surgery. Nor did Defendants inform, warn, or instruct their consumers that their research and testing of hernia mesh devices was highly inadequate. And Defendants' Instructions for Use of their devices mirrored the flaws by understating or concealing them. Further, Defendants' training of health care providers was subject to the same deficiencies. Therefore, Plaintiffs and their health care providers were unaware of the devices defects and dangers.

In summary, Covidien's device marketing and representations obviously did not include information that would properly and adequately warn the public—including Plaintiffs and their treating physicians—as to the high possibility of serious and lasting post-implantation injuries. And as noted above, Defendants' devices have not been tested for safety and efficacy. To the contrary, they have been on the market for decades only through the FDA §510(k) clearance process, a fact Defendants fail to acknowledge or clarify.

The Covidien devices implanted in Plaintiffs failed to perform in a manner that consumers reasonably expected in light of the information provided to them. That led to dangers of injury, with the products' true risks outweighing any benefits.

Moreover, had Defendants properly and adequately informed Plaintiffs and their physicians about the absent data—omitted defects such as frequency, duration, and severity of risks—Plaintiffs would not have consented to implantation. Nor would their surgeons have performed the implants. Therefore, Covidien's failure to warn proximately caused Plaintiffs' injuries.

### 3. Strict Products Liability: Manufacturing Defect

Plaintiffs rely on a third strict products liability cause of action, manufacturing defect. Defendants are liable also for the manufacturing defects in their hernia mesh devices. Under the facts, their products were not reasonably safe for their intended use, as they deviated materially from Defendants' intended design and/or manufacturing specifications. Thus, the devices implanted in Plaintiffs posed unreasonable risks of harm. Although the devices were implanted in the manner in which they were intended to be used, Covidien manufacturing defects were unknown or unknowable to consumers, including Plaintiffs' health care providers, nor were they discoverable upon examination. Due to the hernia mesh devices' deviation from manufacturing and/or their design specifications, the products posed an unreasonable risk of harm to Plaintiffs, and proximately caused them to suffer injuries and incur damages.

### 4. Negligence-Related Causes of Action (Negligence, Negligence Per Se, Gross Negligence, Negligent Misrepresentation)

Plaintiffs also present several negligence-related causes of action against Defendants, based on the facts in this MDL. Aside from negligence, they advance claims for negligence per se, gross negligence, and negligent misrepresentation.

Defendants are liable for negligence to Plaintiffs in whom their hernia mesh devices were implanted. They have a duty to exercise reasonable care in all facets of bringing their hernia mesh products to market, including designing, manufacturing, producing, marketing, labeling, packaging and explaining and instructing the public regarding the devices. And Defendants knew or should have known of the risks the devices presented.

But as discussed above, Defendants did not exercise their duty of reasonable care in many ways. For example, they failed to adequately test and monitor their hernia mesh products; and they did not properly warn consumers, including Plaintiffs and their health care providers, about

the risks and problems with the devices. And they omitted any discussion of risks and adverse effects from implantation. Moreover, Defendants failed to respond promptly to instances of harm their products caused.

Defendants' actions constitute the tort of negligence under all states' common law. As a result of Defendants' multi-faceted acts of negligence, therefore, Plaintiffs have been injured and forced to undergo medical treatment.

Another of Plaintiffs' negligence-related claims is negligence per se, which is a cause of action brought under state health and safety statutes and regulations and federal law. Additionally, Defendants are liable for gross negligence. Their misconduct was extreme and outrageous, and aggravated by malice, fraud, and grossly negligent disregard for the rights of others. Such wrongs proximately caused Plaintiffs' injuries and medical treatment, and the possibility of future treatment. Finally, Defendants engaged in negligent misrepresentations to the public, including Plaintiffs and their physicians, concerning their devices' safety and efficacy. And as discussed above in the failure to warn section, Defendants' sales and marketing campaigns misrepresented the risks and dangers of their hernia mesh devices.

**5. Breach of Express & Implied Warranties**

**a. Express Warranties**

Damages have resulted from Defendants' breach of their express warranties, including harm to the public and Plaintiffs and their physicians. Defendants expressly warranted that their hernia mesh devices were safe for use and reasonably fit for their intended purposes. Included among their express warranties were the following: the devices' perfect fit to groin anatomy; ease of use by surgeons; better outcomes; and reduced post-operative pain and fast recovery. Those

warranties were meant to induce reliance by Plaintiffs and their surgeons on the implantation of the hernia mesh devices.

Covidien also improperly marketed the devices as life-long medical implants. But as the record of risks and complications establishes, that is not so. In fact, despite Defendants' express warranties of life-long use, the devices were defective and unreasonably dangerous, as Plaintiffs' injuries evidence.

Additionally, as Defendants intended, health care providers read and relied on the express warranties, and performed procedures causing post-implant injuries. That is because the hernia mesh devices were defective and unreasonably dangerous, contrary to Covidien's express representations and warranties.

### b. Implied Warranties

Defendants also impliedly warranted that their hernia mesh devices were merchantable and fit for the ordinary purposes intended for their implantation. But they knew or reasonably should have known of the devices' dangerous propensities. And they implied as well that the devices were properly and adequately tested prior to being placed in the stream of commerce. As FDA "clearance" establishes, however, that is a misrepresentation.

Defendants' implied warranties included the following: resorbable collagen barriers would last for a month or more (industry standard); adhesions would be prevented; the rate of chronic pain and its severity would be reduced; other risks of serious injuries would not occur; and all device failures would happen within one year (or less) of implantation.

As intended, Plaintiffs' health care providers—the devices' foreseeable users—relied on Defendants' promotional and marketing materials, instructions, and other data that the products

were fit for their intended use. Thus, they decided to repair the hernias through surgical implant procedures.

As with Covidien's express warranties and as intended, the MDL Plaintiffs and their health care providers relied on the implied warranties to consent to implantation. Such reliance and consequent implantation proximately caused Plaintiffs to sustain serious injuries and damages, making Defendants liable for breaching their implied warranties.

Aside from the above discussion, Plaintiffs have added a number of causes of action that may be used under appropriate circumstances. At this point, however, the above discussion should suffice to furnish the Court with a flavor of Plaintiffs' claims against Covidien.

### B.     COVIDIEN'S DEFENSES

Covidien anticipates seeking dismissal of Plaintiffs' cases through Rule 12b(6) motions to dismiss or for summary judgment under Rule 56. It also intends to utilize *Daubert* challenges. Covidien Defendants' Statement of the Case at 16-17.

Covidien's first ground supporting dismissal is limitations. According to Defendants, perhaps one-third of the MDL cases may be time-barred. That is highly unlikely, given Plaintiffs' facts to date and the various equitable tolling theories that would apply. Significantly, one of those theories is Defendants' own fraudulent concealment, negligent misrepresentation, and inadequate and misleading warnings of the adverse effects caused by their implanted hernia mesh devices.

Defendants also deny outright the bases underlying Plaintiffs' causes of action. It is too early to pose a denial as dispositive, however. They maintain too, against the record, that no scientific evidence supports Plaintiffs' cause of action for design defect under strict products liability. That is not so, as just three examples demonstrate. *See, e.g., Halaweish, et. al.* Novel in vitro model for assessing susceptibility of synthetic hernia repair meshes to staphylococcus aureus

infection using green fluorescent protein-labeled bacteria and modern imagine techniques. **Surg Infect (Larchmt)** 2010; 11(5):449-54 ("It is estimated that the surface area of multifilament material is 157% higher than that of monofilament materials…."); *Klosterhalfen, et al.* Polymers in hernia repair—common polyester vs. polypropylene surgical meshes. **J Mater. Sc.** 2000; 35(19);4769-76 (significant increase in rate of local inflammation with multifilament polyester group, Mersilen and Parietex, compared with sham group and polypropylene group; unlike any other mesh in the study, interface of Parietex showed acute inflammatory reaction characterized by evidence of polymorphonuclear granulocytes ("PMNs") and areas of fibroid necrosis, which PMNs formed miroabcesses after 21 days, and at the end of the 90-day study PMNs were still leading cell-group); *Berrovoet, et. al.* Infected large pore meshes may be salvaged by topical negative pressure therapy. **Hernia** 2013; 17(1):67-73("In our series, it was striking that the only meshes that had to be completely or partially removed because of ongoing infection…were multifilament polyester meshes.").

Covidien defends against Plaintiffs' causes of action by insisting that "decades of real-world use of the products by surgeons" provide grounds establishing that their hernia mesh devices are safe and effective. Covidien Defendants' Statement of the Case at 17. That too is a misleading statement, since over the years the "real-world use" has led to a series of hernia mesh MDLs against Defendants and other manufacturers—certainly not a perfect record for hernia mesh in the real world.

## CONCLUSION

At this juncture Plaintiffs have provided an early overview of the latest hernia mesh litigation against Defendants. More briefing will certainly follow in an attempt to resolve these cases.

Dated: March 6, 2023                                      Respectfully submitted,

*/s/ Kelsey L. Stokes*_____
Kelsey L. Stokes
***Plaintiffs' Interim Co-Lead Counsel***
Texas Bar No. 24083912
FLEMING, NOLEN & JEZ, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056-6109
Tel: (713) 621-7944
Fax: (713) 621-9638
kelsey_stokes@fleming-law.com

Timothy M. O'Brien
***Plaintiffs' Interim Co-Lead Counsel***
Florida Bar No. 055565
LEVIN, PAPANTONIO, RAFFERTY,
PROCTOR, BUCHANAN, O'BRIEN,
BARR & MOUGEY, P.A.
316 South Baylen St., Ste. 600
Pensacola, FL 32502
Tel: (850) 435-7084
Fax: (850) 436-6084
tobrien@levinlaw.com

Walter Kelley, Esq.
***Plaintiffs' Liaison Counsel***
BBO# 670525
4 Court Street
Plymouth, MA 02360
Tel: (617) 420-1111
Fax: (617) 830-0712
wkelley@realjustice.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of March 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of this electronic filing to all counsel of record.

/s/ *Kelsey Stokes*
**Plaintiffs' Interim Co-Lead Counsel**

18